# United States Court of Appeals

*for the*

# First Circuit

---

Case No. 22-1910

KRISTIN DICROCE,

individually and on behalf of all persons similarly situated,

*Plaintiff-Appellant,*

v.

MCNEIL NUTRITIONALS, LLC
and JOHNSON & JOHNSON CONSUMER INC.,

*Defendants-Appellees.*

---

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT OF MASSACHUSETTS IN NO. 21-11660-PBS

## BRIEF OF DEFENDANTS-APPELLEES

HANNAH Y. CHANOINE
*Counsel of Record*
KAYLA N. HARAN
O'MELVENY & MYERS LLP
Times Square Tower
Seven Times Square
New York, New York 10036
(212) 326-2000

- and -

MATTHEW D. POWERS
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
(415) 984-8700

*Attorneys for Defendants-Appellees*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Under Federal Rule of Appellate Procedure 26.1, Defendants-Appellees McNeil Nutritionals, LLC and Johnson and Johnson Consumer Inc., by their undersigned attorneys, hereby state:

- Johnson & Johnson Consumer Inc. is 100% owned by JNTL Holdings 2, Inc. and JNTL Holdings 2, Inc. is 100% owned by Kenvue Inc. After the completion of the IPO, Johnson & Johnson will own 90.9% of the total outstanding shares of Kenvue's common stock or 89.6% if the underwriters exercise in full their over-allotment option. Johnson & Johnson does not have a parent corporation that owns 10% or more of its stock.

- McNeil Nutritionals, LLC, is 100% owned by Johnson & Johnson Consumer Inc.

/s/ *Hannah Y. Chanoine*
Hannah Y. Chanoine

i

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ....................................................... i

STATEMENT REGARDING ORAL ARGUMENT ...............................................1

JURISDICTIONAL STATEMENT ....................................................................1

PRELIMINARY STATEMENT ........................................................................2

STATEMENT OF THE ISSUES.......................................................................6

STATEMENT OF THE CASE ..........................................................................6

    A.    The Parties ..................................................................................6

    B.    The Regulatory Framework .................................................7

    C.    Lactaid® and Its Labels .......................................................9

    D.    DiCroce's Allegations ..........................................................10

    E.    Procedural History...............................................................12

        1.    DiCroce's Original Complaint............................12

        2.    The District Court's First Dismissal Order.............12

        3.    DiCroce's First Amended Complaint .....................13

        4.    The District Court's Second Dismissal Order .........14

SUMMARY OF THE ARGUMENT .................................................................15

STANDARD OF REVIEW ...........................................................................18

ARGUMENT .............................................................................................18

I.    The District Court Correctly Dismissed DiCroce's Chapter 93A Claim For Failure To Plead A Deceptive Act .........................................................18

    A.    The district court correctly held that DiCroce did not plead a chapter 93A claim because she has not identified any misstatements on the Lactaid® supplements' labels. .........................18

    B.    The district court correctly held that DiCroce did not plead a chapter 93A claim because no reasonable consumer would be misled by the Lactaid® supplements' labels. .....................................19

II.    The FDCA Preempts DiCroce's Allegation That Lactose Intolerance Is A Disease ........................................................................................23

ii

**TABLE OF CONTENTS**
**(continued)**

Page

A.   DiCroce has not pleaded any facts that support the inference that lactose intolerance is a disease. ....................................................23

B.   The FDCA preempts DiCroce's allegations. .....................................25

1.   The FDCA impliedly preempts DiCroce's misbranding claims. ...............................................................................27

2.   The FDCA expressly preempts DiCroce's misbranding claims. ...............................................................................29

III.   The District Court Correctly Dismissed DiCroce's False Advertising Claim...............................................................................................30

IV.   The District Court Correctly Dismissed Plaintiff's Unjust Enrichment Claim...............................................................................................33

V.   This Court May Affirm On The Alternative Ground That DiCroce Has Failed To Plead Any Injury ...........................................................35

VI.   DiCroce's Arguments About Several Non-Dispositive Issues Are Meritless, And The Court Need Not Reach Them ........................................40

A.   DiCroce is not entitled to multiple damages. .....................................41

B.   DiCroce lacks standing to seek injunctive relief...............................44

C.   DiCroce cannot represent a nationwide class....................................45

CONCLUSION ........................................................................................48

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amarin Pharma, Inc. v. Int'l Trade Comm'n*,
  923 F.3d 959 (Fed. Cir. 2019) ............................................................26

*Aspinall v. Philip Morris Cos.*,
  813 N.E.2d 476 (Mass. 2004) ............................................................20

*Bell v. Publix Super Mkts., Inc.*,
  982 F.3d 468 (7th Cir. 2020) ............................................................22

*Bernstein v. Conopco, Inc.*,
  2022 WL 2161149 (D. Mass. June 15, 2022) ....................................31

*Blake v. Pro. Coin Grading Serv.*,
  898 F. Supp. 2d 365 (D. Mass. 2012) ...............................................32

*Borchenko v. L'Oreal USA, Inc.*,
  389 F. Supp. 3d 769 (C.D. Cal. 2019) ...............................................28

*Bowring v. Sapporo U.S.A., Inc.*,
  234 F. Supp. 3d 386 (E.D.N.Y. 2017) ...............................................19

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001)........................................................... 9, 27, 29

*Bushkin Assoc., Inc. v. Raytheon Co.*,
  473 N.E.2d 662 (Mass. 1985) ...........................................................46

*Cambridge Plating Co. v. Napco, Inc.*,
  85 F.3d 752 (1st Cir. 1996) ..............................................................43

*Camey v. Force Factor, LLC*,
  2016 WL 10998440 (D. Mass. May 16, 2016).......................... 47, 48

*Carlson v. Gillette Co.*,
  2015 WL 6453147 (D. Mass. Oct. 23, 2015) ....................................21

*Chong v. Kind LLC*,
  2022 WL 464149 (N.D. Cal. Feb. 15, 2022) .....................................29

*Comput. Sys. Eng'g, Inc. v. Qantel Corp.*,
  740 F.2d 59 (1st Cir. 1984)................................................................42

iv

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Counts v. Gen. Motors, LLC*,
  606 F. Supp. 3d 547 (E.D. Mich. 2022) ............................................37

*Dachauer v. NBTY, Inc.*,
  913 F.3d 844 (9th Cir. 2019) ..............................................30

*Depianti v. Jan-Pro Franchising Int'l, Inc.*,
  39 F. Supp. 3d 112 (D. Mass. 2014)...................................34

*Derby v. Jos. A. Bank Clothiers, Inc.*,
  2014 WL 7361023 (D. Mass. Dec. 23, 2014).....................................46

*Downing v. Keurig Green Mountain, Inc.*,
  2021 WL 2403811 (D. Mass. June 11, 2021).................................. 37, 45, 47, 48

*Dumont v. Reily Foods Co.*,
  934 F.3d 35 (1st Cir. 2019).....................................26

*Elkind v. Revlon Consumer Prod. Corp.*,
  2015 WL 2344134 (E.D.N.Y. May 14, 2015)....................................28

*Fernandes v. Havkin*,
  731 F. Supp. 2d 103 (D. Mass. 2010).....................................19

*Fishman Transducers, Inc. v. Paul*,
  684 F.3d 187 (1st Cir. 2012)...............................................48

*Fitzgerald v. Polar Corp.*,
  2020 WL 6586628 (D. Mass. Nov. 10, 2020) ...................................21

*Flesner v. Tech. Commc'ns Corp.*,
  575 N.E.2d 1107 (Mass. 1991).........................................44

*Flores v. OneWest Bank*,
  172 F. Supp. 3d 391 (D. Mass. 2016), *aff'd*, 886 F.3d 160 (1st Cir.
  2018) ...........................................................33

*Gabriel v. Jackson Nat'l Life Ins.*,
  2015 WL 1410406 (D. Mass. Mar. 26, 2015) ....................................43

*Gent v. CUNA Mut. Ins. Soc'y*,
  611 F.3d 79 (1st Cir. 2010)...............................................25

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Gore v. Arbella Mut. Ins.*,
    77 Mass. App. Ct. 518 (2010)...........................................................................42

*Gustavsen v. Alcon Lab'ys, Inc.*,
    272 F. Supp. 3d 241 (D. Mass. 2017), *aff'd*, 903 F.3d 1 (1st Cir.
    2018) ...........................................................................................................25

*Heller v. Silverbranch Constr. Corp.*,
    382 N.E.2d 1065 (Mass. 1978) .......................................................................42

*In re Biogen, Inc. ERISA Litig.*,
    2021 WL 3116331 (D. Mass. July 22, 2021) ...................................................38

*In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. &
    Sales Pracs. Litig.*,
    2015 WL 7282543 (D.N.H. Nov. 16, 2015).....................................................45

*In re Evenflo Co. Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    54 F.4th 28 (1st Cir. 2022)..............................................................................45

*In re Medtronic, Inc.*,
    623 F.3d 1200 (8th Cir. 2010) ........................................................................27

*In re Montreal, Me. & Atl. Ry., Ltd.*,
    888 F.3d 1 (1st Cir. 2018)...............................................................................36

*Jessani v. Monini N. Am., Inc.*,
    744 F. App'x 18 (2d Cir. 2018) ......................................................................22

*Kansallis Fin. Ltd. v. Fern*,
    659 N.E.2d 731 (Mass. 1996) .........................................................................43

*Kerin v. Titeflex Corp.*,
    770 F.3d 978 (1st Cir. 2014)...........................................................................36

*Korolshteyn v. Costco Wholesale Corp.*,
    393 F. Supp. 3d 1019 (S.D. Cal. 2019) ...........................................................30

*Lass v. Bank of Am., N.A.*,
    695 F.3d 129 (1st Cir. 2012)...........................................................................35

*Laufer v. Acheson Hotels, LLC*,
    50 F.4th 259 (1st Cir. 2022)............................................................................44

**TABLE OF AUTHORITIES**
(continued)

Page

*Legal Sea Foods, LLC v. Strathmore Ins. Co.*,
  36 F.4th 29 (1st Cir. 2022)..................................................................18

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)...........................................................................36

*Lyon v. Caterpillar, Inc.*,
  194 F.R.D. 206 (E.D. Pa. 2000)..........................................................47

*Manning v. Bos. Med. Ctr. Corp.*,
  725 F.3d 34 (1st Cir. 2013)......................................................... 46, 48

*Martin v. Mead Johnson Nutrition Co.*,
  2010 WL 3928710 (D. Mass. Sept. 13, 2010), *report and
  recommendation adopted in relevant part*, 2010 WL 3928707
  (D. Mass. Sept. 30, 2010) ........................................................... 32, 33

*Mass. Eye & Ear Infirmary v. QLT*,
  412 F.3d 215 (1st Cir. 2005)...............................................................33

*Massachusetts v. Mylan Laby's*,
  357 F. Supp. 2d 314 (D. Mass. 2005)..................................................35

*Min Sook Shin v. Umeken, U.S.A., Inc.*,
  2017 WL 6885378 (C.D. Cal. June 1, 2017), *aff'd*, 773 F. App'x
  373 (9th Cir. 2019)..............................................................................30

*Moore v. Trader Joe's Co.*,
  4 F.4th 874 (9th Cir. 2021) .................................................................21

*Newly Wed Foods v. Superior Nut*,
  2010 WL 1178404 (Mass. Super. Ct. Feb. 18, 2010).........................43

*O'Hara v. Diageo-Guinness, USA, Inc.*,
  306 F. Supp. 3d 441 (D. Mass. 2018)..................................................37

*Ortiz v. Examworks, Inc.*,
  26 N.E.3d 165 (Mass. 2015)...............................................................19

*Patenaude v. Orgain, LLC*,
  594 F. Supp. 3d 108 (D. Mass. 2022)..................................................31

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Reed v. Zipcar, Inc.*,
883 F. Supp. 2d 329 (D. Mass. 2012)................................................34

*Riley v. Cordis Corp.*,
625 F. Supp. 2d 769 (D. Minn. 2009)................................................29

*Rule v. Fort Dodge Animal Health*,
607 F.3d 250 (1st Cir. 2010)...............................................................36

*S. States Police Benev. Ass'n, Inc. v. First Choice Armor &
Equip., Inc.*,
241 F.R.D. 85 (D. Mass. 2007)...........................................................48

*Shaulis v. Nordstrom, Inc.*,
865 F.3d 1 (1st Cir. 2017).......................................................... passim

*Shaw v. Rodman Ford Truck Ctr., Inc.*,
477 N.E.2d 413 (Mass. App. Ct. 1985) .............................................41

*Steinbeck v. Dollar Thrifty Auto. Grp., Inc.*,
2008 WL 4279798 (N.D. Okla. Sept. 15, 2008)................................47

*Thornton v. Harvard*,
2 F. Supp. 2d 89 (D. Mass. 1998).......................................................33

*Tomasella v. Nestle USA, Inc.*,
962 F.3d 60 (1st Cir. 2020)................................................ 20, 34, 35

*Vass v. Blue Diamond Growers*,
2015 WL 9901715 (D. Mass. Aug. 11, 2015) ...................................35

*Verzani v. Costco Wholesale Corp.*,
2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010), *aff'd*, 432 F. App'x
29 (2d Cir. 2011)..................................................................................28

*Weissman v. UnitedHealthcare Ins. Co.*,
2021 WL 858436 (D. Mass. Mar. 8, 2021) .......................................45

## STATUTES

21 U.S.C. § 321(ff)................................................................... 7, 30

21 U.S.C. § 337(a) ................................................................... 9, 26

## TABLE OF AUTHORITIES
### (continued)

**Page**

21 U.S.C. § 343(r)(6)(A) ............................................................ 7, 10, 23, 26

21 U.S.C. § 343(r)(6)(C) .................................................................. 8, 26

21 U.S.C. § 343-1(a)(5) ...........................................................................30

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1332 ......................................................................................1

Mass. Gen. Laws ch. 266, § 120E ...........................................................44

Mass. Gen. Laws ch. 266, § 141 ..............................................................44

Mass. Gen. Laws ch. 266, § 91 ................................................... 12, 31, 32

Mass. Gen. Laws ch. 93A, § 11 ...............................................................48

Mass. Gen. Laws ch. 93A, § 2, *et seq.* .....................................................12

Mass. Gen. Laws ch. 93A, § 9(3) .............................................................41

## OTHER AUTHORITIES

65 Fed. Reg. 1000 (Jan. 6, 2000) ......................................................... 8, 23

68 Fed. Reg. 33362 (June 4, 2003) ..........................................................25

FDA, *Small Business Assistance: Frequently Asked Questions on the Regulatory Process of Over-the-Counter (OTC) Drugs* (Nov. 18, 2022) ...................................................................................................25

Restatement (Second) of Conflict of Laws (1971) ..................................46

Stephen D. Riden, *General Law of Damages in Massachusetts* (5th ed. 2022) ........................................................................................44

## REGULATIONS

21 C.F.R § 101.93(f) (2011) ................................................................. 8, 23

21 C.F.R § 347.10(r) (2003) .....................................................................25

21 C.F.R § 101.93(g)(2) .............................................................................8

21 C.F.R. § 331.11 (1990) ........................................................................25

## STATEMENT REGARDING ORAL ARGUMENT

Undersigned counsel respectfully submits that oral argument is not necessary to the resolution of this appeal.  The pertinent facts, issues, and legal arguments are fully presented in the briefs and record on appeal.  If the Court schedules oral argument, however, Defendants-Appellees respectfully request that they be granted the same amount of time for argument as may be granted to Plaintiff-Appellant Kristin DiCroce.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over the plaintiff's suit pursuant to 28 U.S.C. § 1332.  The Court entered a final judgment dismissing this suit in its entirety on November 10, 2022.  (RA173.)  Plaintiff filed a timely notice of appeal on November 22, 2022.  (RA174.)  This Honorable Court has original appellate jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1291.

## PRELIMINARY STATEMENT

Millions of Americans are lactose intolerant. When they drink milk, eat ice cream, or try to enjoy any milk-based food, they can suffer from bloating, gas, diarrhea, and other discomforts. This is because they do not produce enough of an enzyme—lactase—that aids the digestion of lactose, a sugar found in dairy products. For decades, lactase has been available in tablet form as a dietary supplement that, when taken before a meal, helps a person who is lactose intolerant digest and enjoy dairy products. Lactaid® has long been the leading brand of lactase dietary supplements.

In this false advertising case over Lactaid® lactase supplement labels, Plaintiff-Appellant Kristin DiCroce never disputes that the tablets she bought over and over again over the years worked for her: she does not dispute that the tablets acted to prevent "gas, bloating, and diarrhea associated with digesting dairy"—exactly as the labels promised. Nor does she dispute that the labels truthfully declare to consumers (in large bold font) that the Food and Drug Administration ("FDA") has not evaluated these promises. Nor does she dispute that the labels tell consumers—again, in large bold font—that the tablets are "not intended to diagnose, treat, cure, or prevent any disease." And she does not dispute that the label says in bold font that this product is "not a drug."

Instead, DiCroce claims that because the discomforts she endured from consuming dairy qualify as a "disease"—based on her idiosyncratic reading of the Food, Drug, and Cosmetic Act ("FDCA")—FDA *should* have evaluated the lactase pills as a "drug" through its extensive regulatory approval process. Although she does not explain how she overpaid for a lactase tablet priced as a mere dietary supplement rather than the "unapproved drug" she claims she received, she asserts an overpayment injury nonetheless.

In reality, DiCroce is performing a sleight of hand. Although she presents her lawsuit as being about Defendants' violation of state consumer protection laws, it is really about her attempt to use those state laws to enforce her own, convoluted interpretation of the FDCA. This is not permissible: the FDCA does not contain a private right of action—only FDA may enforce the FDCA.

The district court rightly dismissed DiCroce's lawsuit—twice. It first dismissed her complaint for lack of standing, and then it dismissed it again on the merits. In its second dismissal order, the district court held no reasonable consumer could find the Lactaid® supplements' labels misleading. Indeed, the district court held that, given the completely accurate statements on the Lactaid® supplements' labels, any reasonable consumer reading the labels would conclude that Lactaid® is a supplement that assists with the digestion of dairy and is not a drug that can treat a disease. Accordingly, the district court dismissed all three of DiCroce's claims:

violation of chapter 93A of the Massachusetts Consumer Protection Act, which prohibits unfair or deceptive business practices; violation of Massachusetts' false advertising statute, which prohibits untrue and misleading advertisements; and unjust enrichment. That decision is correct and should be affirmed for any of the following reasons.

*No deceptive act.* As the district court correctly held, DiCroce has not alleged an essential element for two of her claims: a deceptive act or practice (chapter 93A), or deceptive or misleading advertisements (false advertising). This is because Lactaid®'s labels are completely true and accurately and explicitly disclose that Lactaid® is not an FDA-approved "drug" and is not intended to "treat" any disease. Her false advertising claim also fails for another reason: she has not alleged facts to support her conclusory assertion that Defendants "knew or should have known" they were misleading consumers.

*Her claims are preempted.* To the extent DiCroce's lawsuit is based not on consumer deception but on a freestanding theory that Defendants "misbranded" the Lactaid® supplements, the FDCA both impliedly preempts her claims (because she is suing Defendants only *because* their conduct purportedly violates the FDCA) and expressly preempts her claims (because Lactaid® is a properly labeled dietary supplement under the FDCA, DiCroce seeks to impose on Defendants requirements that are inconsistent with the FDCA).

***Unjust enrichment is not available.***  DiCroce's unjust enrichment claim fails because legal claims are available.  Although her legal claims are without merit, the mere availability of legal claims bars her unjust enrichment claim.

***No standing.***  DiCroce has no standing to bring her claims.  She has failed to plead an injury-in-fact, required to establish Article III standing, or real economic damages, required to state a claim under chapter 93A.  Even though the district court allowed her to amend her complaint, DiCroce has mustered only a bare allegation that she paid an eleven-cent-per-pill "price premium" for Lactaid® supplements. This falls short of establishing a price premium theory of injury because she has not identified a specific benefit that Lactaid® advertised that she did not receive.   In addition, the two alternative lactase supplements she identifies to establish her theory are marketed with statements similar to the ones on the Lactaid® labels that she asserts are misleading, and thus those two products are supposedly also sold at a premium under her theory.

At bottom, this Court should affirm the judgment because DiCroce's lawsuit is no more than a dressed-up claim that Defendants have violated the FDCA.  But FDA has taken no such position, and the FDCA provides no private right of action. DiCroce should not be allowed to co-opt Massachusetts state law to seek redress for a purported—and indeed, facially absurd—FDCA violation.  Allowing DiCroce's litigation to continue would not only upset the regulatory scheme that Congress

designed, but it would also green-light costly, meritless labeling litigation, driving up prices and hurting consumers.

## STATEMENT OF THE ISSUES

1.  Did the district court correctly dismiss DiCroce's chapter 93A claim for failure to plead a deceptive act?

2.  Are DiCroce's legal claims preempted, both implied and expressly, by the FDCA?

3.  Did the district court correctly dismiss DiCroce's false advertising claim for failure to plead a deceptive or misleading advertisement?

4.  Did the district court correctly dismiss DiCroce's unjust enrichment claim?

5.  Did the district court err in holding that DiCroce had adequately pleaded injury sufficient to support Article III standing?

6.  Is DiCroce entitled to multiple damages?

7.  Does DiCroce have standing to seek injunctive relief?

8.  May DiCroce sue on behalf of a nationwide class?

## STATEMENT OF THE CASE

### A.    The Parties

Defendants-Appellees McNeil Nutritionals, LLC and Johnson & Johnson Consumer, Inc. ("Defendants") make and distribute Lactaid® Lactase Enzyme Supplements.  (RA17:¶¶1, 8-9.)  As its labeling explains, Lactaid® supplements are a tablet form of the enzyme lactase that can help "prevent[] [g]as, [b]loating &

6

[d]iarrhea associated with digesting dairy." (RA19-20:¶17.)

Plaintiff-Appellant Kristin DiCroce is an individual who lives in Massachusetts. (RA17:¶7.) She has purchased Lactaid® supplements near her home in Massachusetts "on multiple occasions" within the past four years. (RA22:¶26.)

### B.    The Regulatory Framework

The Food and Drug Administration ("FDA") regulates dietary supplements, like the Lactaid® supplements, under the Food, Drug, and Cosmetic Act ("FDCA"), as amended by the Dietary Supplement Health and Education Act of 1994 ("DSHEA") and FDA regulations.

The DSHEA defines a dietary supplement as a product that is "intended to supplement the diet" and that contains certain "dietary ingredients." 21 U.S.C. § 321(ff). Enzymes—like lactase—are "dietary ingredients." (RA183.) Historically, FDA described lactase pills as "dietary supplements" that can "help people digest foods that contain lactose." (RA213.)

The DSHEA also governs dietary supplement labeling. It explicitly permits dietary supplement labels to include "structure/function claims"—statements that, among other things, "describe[] the role of a nutrient or dietary ingredient intended to affect the structure or function in humans." 21 U.S.C. § 343(r)(6)(A). And FDA has explicitly concluded that the statements "[a]lleviates the symptoms referred to

7

as gas" and "alleviates bloating" are "acceptable structure/function claims, because the symptoms in the claims are not sufficiently characteristic of specific diseases." *Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body*, 65 Fed. Reg. 1000, 1031 (Jan. 6, 2000); *see also* 21 C.F.R § 101.93(f) (2011).

If a dietary supplement's label contains structure/function claims, the label must also include a specific disclosure. Specifically, the label must include a prominent disclosure in boldfaced type: "THIS STATEMENT HAS NOT BEEN EVALUATED BY THE FOOD AND DRUG ADMINISTRATION. THIS PRODUCT IS NOT INTENDED TO DIAGNOSE, TREAT, CURE OR PREVENT ANY DISEASE." 21 U.S.C. § 343(r)(6)(C).

By contrast, FDA regulates drugs and drug labeling under a different set of rules and regulations than the ones described above for dietary supplements. As relevant to this appeal, drug labeling—but not dietary supplement labeling—may contain "disease claims." A "disease claim" is a statement that a drug product works "to diagnose, mitigate, treat, cure, or prevent disease." 21 C.F.R. § 101.93(g)(2). Disease claims require prior approval by FDA and may be made only for products that are approved drugs. *Id.* § 101.93(f).

Under this federal regulatory framework, manufacturers and distributors of dietary supplements are prohibited from misbranding their products—*e.g.*, labeling

a drug as a dietary supplement to evade the stricter FDA review required for drugs. For example, a manufacturer of aspirin, a drug, would not evade FDA review simply by calling aspirin a "dietary supplement" on its label.  In that scenario, FDA has a wide range of enforcement activities at its disposal—from requiring the manufacturer to correct the violation, to removing violative products, up to criminally prosecuting offending firms.  But, importantly, only FDA may enforce the FDCA: the FDCA does not provide a private right of action for individuals to sue manufacturers over purported FDCA violations.  *See* 21 U.S.C. § 337(a); *see also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) ("The FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance.").

### C.    Lactaid® and Its Labels

As its label explains, Lactaid® Lactase Enzyme Supplement "is a dietary supplement."  (RA54.)  It contains the enzyme lactase (RA54), which helps in the digestion of lactose, a sugar found in dairy products.  People who have lactose intolerance—a condition caused by a deficiency in the enzyme lactase—experience gas, bloating, diarrhea, or other discomforts when they eat dairy products.  (RA207; RA211.)  When taken before a meal, Lactaid® supplements help lactose intolerant people comfortably digest dairy products.

Lactaid® explains this effect on its labels.  It says that it is "[f]or the

prevention of: gas, bloating, & diarrhea associated with digesting dairy" and can help consumers "enjoy dairy again." (RA53-54.) In regulatory terms, these are permitted "structure/function claims" because they "describe[] the role of a nutrient or dietary ingredient intended to affect the structure or function in humans." 21 U.S.C. § 343(r)(6)(A).

Lactaid® supplements' labels also contain the disclosures required for a dietary supplement making permitted structure/function claims on its packaging. On both the front and back of the package, and in prominent and boldface type, the label says: "**THESE STATEMENTS HAVE NOT BEEN EVALUATED BY THE FOOD & DRUG ADMINISTRATION. THIS PRODUCT IS NOT INTENDED TO DIAGNOSE, TREAT, CURE, OR PREVENT ANY DISEASE**." (RA53-54.) In addition, the labels go above and beyond the required regulatory disclosures: they state in boldface type that Lactaid® is "**NOT A DRUG**." (RA54.)

In short, Lactaid®'s labels accurately convey the product's use and benefits as well as its regulatory status as a dietary supplement. The labels also contain appropriate disclaimers in full compliance with federal regulations.

### D.    DiCroce's Allegations

In this lawsuit, DiCroce alleges that the labels for certain Lactaid® supplements—Lactaid® Fast Act Chewables, Lactaid® Fast Act Caplets, and

Lactaid® Original Strength Caplets—are misleading.  (RA19-20:¶17.)  Although

each label explicitly provides that each Lactaid® supplement is "not a drug" (RA54),

DiCroce argues that Defendants are improperly holding out the Lactaid®

supplements as "drugs" because she believes lactose intolerance is a "disease."

(RA19:¶17.)  According to DiCroce, the statement that the lactase enzyme is "for

the prevention of gas, bloating, and diarrhea associated with digesting dairy" is

tantamount to stating that Lactaid® "prevent[s], treat[s], cure[s], or mitigate[s]

lactose intolerance and/or symptoms associated with being lactose intolerant."

(RA16:¶2.)  In other words, although this statement is a permitted structure/function

claim (*see supra* section B), DiCroce argues that it is an illegal  "disease claim[]"

(RA22:¶25) and contends that this, in itself, "constitutes materially misleading

labeling and marketing practices" because "Defendants are labeling and marketing

the Supplements as drugs." (RA21:¶23.)

     Although she does not explain how she overpaid for a lactase tablet priced as

a mere dietary supplement rather than the "unapproved drug" she claims she

received, DiCroce alleges that, because of the misleading labels, she paid an

"unwarranted premium" for Lactaid® supplements.  (RA24:¶¶33, 34.)  She alleges

that she paid $0.20 per pill for Lactaid® products but could have paid less for other

lactase supplements that are not "misbranded" with "illegal" "disease claims."

(RA24:¶33.)  She points to lactase supplements made by Puritan's Pride ($0.08 per

11

dosage) and Vitamin Shoppe ($0.09 per dosage) as the relevant comparators that are labeled "truthfully (*i.e.*, without claiming to be effective for treating the disease of lactose intolerance)." (RA24-25:¶34.)

### E.    Procedural History

#### 1.    DiCroce's Original Complaint

In October 2021, DiCroce filed this putative class action against Defendants. (RA3, ECF No. 1.) Seeking to represent a nationwide class, she asserted three causes of action: (1) that Defendants engaged in deceptive acts or practices in violation of chapter 93A of the Massachusetts Consumer Protection Act (Mass. Gen. Laws ch. 93A, § 2, *et seq*.) and other states' similar consumer protection statutes; (2) that Defendants engaged in false advertising in violation of Massachusetts law (Mass. Gen. Laws ch. 266, § 91); and (3) that Defendants were unjustly enriched because DiCroce conferred an economic benefit on Defendants when she bought Lactaid®.

#### 2.    The District Court's First Dismissal Order

In April 2022, the district court granted Defendants' motion to dismiss for failure to state a claim. (RA12.) It dismissed DiCroce's suit on standing grounds, holding that she had failed to plausibly allege an injury-in-fact. (RA14.) It rejected her "vague claim" that Lactaid®'s purportedly misleading labeling "affected her purchasing decisions" as insufficient to support Article III standing. (*Id.*) The dismissal, however, was without prejudice, and the district court allowed DiCroce to file an amended complaint. (RA15.) The court did not reach Defendants' other

arguments, but noted that "Defendants' Motion raises serious arguments against the Complaint's viability on the merits."  (RA12.)

### 3.    DiCroce's First Amended Complaint

DiCroce then filed her First Amended Complaint ("FAC").  (RA8, ECF No. 45; RA15-44.)  The changes from the original complaint were minimal, but she added two new factual allegations in an attempt to plead an actionable injury due to her purchases of Lactaid® supplements through the years: first, that she paid an "unwarranted premium" for Lactaid® supplements due to their "illegal disease claims" (RA24:¶33; RA32:¶68), and, second, that a single study of lactase supplements generally (not specific to Lactaid® supplements) shows mixed efficacy for consumers.  (RA23:¶31.)

Otherwise, the FAC hews closely to the original complaint.  Seeking to represent a nationwide class (RA33), DiCroce repeated her allegations that the labels on three Lactaid® products—Lactaid® Fast Act Chewables, Lactaid® Fast Act Tablets, and Lactaid® Original Strength Caplets—were misleading because they held out the supplements as drugs.  (RA19-20:¶¶17-18.)  The FAC asserted the same three causes of action as the original complaint: (1) violation of chapter 93A "and other[] substantially similar state consumer protection statutes"; (2) violation of Massachusetts' false advertising law; and (3) unjust enrichment.  (RA30-32.)  In addition to damages, restitution, declaratory relief, disgorgement, attorneys' fees,

and costs, DiCroce seeks injunctive relief, requesting that Defendants be enjoined from selling the Lactaid® supplements as labeled anywhere in the United States. (RA33-34.)

### 4.    The District Court's Second Dismissal Order

In November 2022, the district court granted Defendants' motion to dismiss the FAC.  (RA159.)  Unlike in its first dismissal order, the district court held that DiCroce had plausibly alleged an injury.  (RA166.)  Accepting the FAC's factual allegations as true as is required at the pleading stage, the district court held that her allegation that she paid $0.11 per pill more than she would have but for the statements on Lactaid®'s labels was enough to establish standing.  (*Id.*)

But the district court still dismissed DiCroce's claims, this time for her failure to plead a deceptive act or practice—an essential element of both her chapter 93A and false advertising claims.  (RA167-169.)  First, the district court noted that DiCroce had failed to "identif[y] a misrepresentation of fact" on the Lactaid® supplements' labels.  (RA168.)  Next, it held that "Lactaid's packaging is not misleading" and that "no reasonable consumer could find Lactaid's product labels deceptive."  (*Id.*)  Because "the labels that DiCroce attaches to the Amended Complaint each plainly state that Lactaid is not a drug and not intended to treat any disease," the district court held that "[a]ny reasonable consumer reading Lactaid's

14

label would conclude that Lactaid is a supplement that assists with the digestion of dairy and is not a drug that can treat a disease." (RA168-169.)

Finally, the district court rejected DiCroce's argument that "the disclaimers on Lactaid's labels misled her because they falsely imply that Lactaid's packaging does not require FDA evaluation" as a "conclusory allegation" that "does not accord with the language of the disclaimers, which say only that the statements have not been evaluated by the FDA." (RA169.) Accordingly, the district court dismissed DiCroce's suit with prejudice (RA173), and she timely filed the instant appeal (RA174-175).

## SUMMARY OF THE ARGUMENT

This Court should affirm the district court's dismissal because DiCroce has not pleaded a "deceptive act or practice," an essential element of her chapter 93A claim, or a "deceptive or misleading advertisement," an essential element of her false advertising claim. The district court correctly held that DiCroce failed to plead facts identifying a misrepresentation of fact on the Lactaid® supplements' labels or suggesting that a reasonable consumer would find the supplements' labels deceptive.

DiCroce's unjust enrichment claim was also properly dismissed. This equitable claim fails because the mere availability of legal claims (chapter 93A and false advertising), despite the fact that they are meritless, bars her unjust enrichment claim.

15

This Court may also affirm the judgment on any of the many alternative grounds supported by the record:

***Her claims are preempted.*** Although, in form, DiCroce asserts claims against Defendants under Massachusetts law, DiCroce is, in substance, suing Defendants because she thinks their labeling of the Lactaid® supplements violates the FDCA. For that reason, her claims are impliedly preempted by the FDCA. DiCroce also seeks to change how Defendants label the Lactaid® supplements, even though the labeling is in total compliance with the FDCA and other regulations. Because she seeks to impose on Defendants labeling requirements that are inconsistent with the FDCA, her claims are also expressly preempted.

***No scienter.*** Although DiCroce's false advertising claim fails because she has not pleaded a deceptive act or practice, it fails for another, independent reason: she has not alleged facts to support her conclusory assertion that Defendants "knew or should have known" they were misleading consumers.

***No standing.*** DiCroce has failed to plead an injury-in-fact, required to establish Article III standing, or real economic damages, required to state a claim under chapter 93A. Even though the district court allowed her to amend her complaint, DiCroce has mustered only a bare allegation that she paid an eleven-cent-per-pill "price premium" for Lactaid® supplements. But she has not pleaded a price premium theory of injury because she has not identified a specific benefit that

Lactaid® advertised that she personally did not receive, which is required to state a price premium theory of injury.

In addition, this Court should reject DiCroce's arguments on the extra issues she briefed on appeal. The district court did not reach these issues, and deciding them is not necessary for resolving this appeal:

*No multiple damages.* Before the district court, DiCroce sought multiple damages. But she may not recover multiple damages for her chapter 93A claim because she has not made the required statutory showing that Defendants' purported violation was "willful or knowing." Nor may she recover multiple damages for her false advertising claim because, under Massachusetts law, multiple damages are not available for that cause of action.

*No standing for injunctive relief.* Before the district court, DiCroce sought to enjoin Defendants from continuing to purportedly violate chapters 93A, § 2 and 266, § 91. But she does not have standing to seek prospective injunctive relief because she has not alleged any likely future injury.

*DiCroce cannot represent a nationwide class.* Before the district court, DiCroce argued that Defendants' challenge to her claim of representing a putative "nationwide class" was erroneous and premature. But Defendants' challenge below was neither. DiCroce may not plead allegations on behalf of a "nationwide class" of Lactaid® supplement purchasers because consumers who purchased the

17

supplements in other states may not bring claims under Massachusetts law. This defect is obvious from the face of her complaint, and thus resolution of this issue at the pleadings stage is appropriate.

## STANDARD OF REVIEW

This Court reviews a district court's grant of a motion to dismiss for failure to state a claim *de novo*. *See Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 34 (1st Cir. 2022).

## ARGUMENT

### I.    The District Court Correctly Dismissed DiCroce's Chapter 93A Claim For Failure To Plead A Deceptive Act

The district court correctly held that DiCroce has not stated a chapter 93A claim because she has not adequately pleaded a deceptive act. The Court may affirm the district court's dismissal of this claim on this basis alone.

#### A.    The district court correctly held that DiCroce did not plead a chapter 93A claim because she has not identified any misstatements on the Lactaid® supplements' labels.

To start, DiCroce has not identified statements on the Lactaid® supplements' labels that are not true. As the district court correctly held, DiCroce has not "identified a misrepresentation of fact." (RA168.)

The labels truthfully state that FDA has not evaluated the statements on the label (RA53)—a statement that DiCroce concedes is "literally true" (RA22:¶28). The labels truthfully state that Lactaid® is intended to prevent "gas, bloating &

18

diarrhea associated with digesting dairy" (RA53)—which DiCroce does not personally challenge. (In fact, DiCroce found Lactaid® effective enough to purchase it "on multiple occasions within the past four years." (RA22:¶26.)) And the labels truthfully disclaim that Lactaid treats any disease. (RA53, RA56.) As myriad courts have held, truthful statements like these, coupled with accurate disclosures, do not give rise to a chapter 93A claim. *See Ortiz v. Examworks, Inc.*, 26 N.E.3d 165 (Mass. 2015) (affirming dismissal of chapter 93A claim because plaintiff's confusion did not render notice letters containing "accurate[]" information deceptive); *see also Fernandes v. Havkin*, 731 F. Supp. 2d 103, 118 (D. Mass. 2010) (granting summary judgment for defendant that "provided accurate disclosures," which defeated plaintiff's chapter 93A deceptive trade action); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 391 (E.D.N.Y. 2017) (dismissing false advertising claim because a label's "truthful statement" that was "qualified by [a] visible disclosure statement" "would not mislead a reasonable consumer").

### B. The district court correctly held that DiCroce did not plead a chapter 93A claim because no reasonable consumer would be misled by the Lactaid® supplements' labels.

DiCroce's chapter 93A claim is based on her personal, convoluted interpretation of Lactaid®'s labels and her misunderstanding of Lactaid®'s regulatory status. This dooms her claim. To state a chapter 93A claim, DiCroce must plead facts suggesting "a deceptive act or practice on the part of the seller"—

*i.e.*, that the Lactaid® labels have "the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted (*i.e.*, to entice a reasonable consumer to purchase the product)." *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 71 (1st Cir. 2020) (quoting *Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 488 (Mass. 2004)). As the district court correctly held, DiCroce failed to meet this pleading standard because "no reasonable consumer could find Lactaid's product labels deceptive." (RA168.) The district court got it right.

DiCroce argues that Lactaid®'s labels are misleading by way of a multi-step reasoning process: (1) although Lactaid® labels explicitly state that Lactaid® "is a dietary supplement," is "not a drug," and is "not intended to diagnose, treat, cure or prevent any disease," DiCroce believes that (2) Lactaid® is actually a drug because (3) she interprets the permitted structure/function claims on the Lactaid® supplements' labels to be "disease claims"—*i.e.*, "claims that [Lactaid® products] prevent, treat, cure, or mitigate lactose intolerance and/or symptoms associated with being lactose intolerant," which (4) she believes transforms Lactaid® from a dietary supplement into a drug, and (5) makes FDA approval of Lactaid® and its labels necessary—all of which render misleading the label's statements that Lactaid® is "not a drug" and that FDA has not evaluated the statements on the label. (RA16:¶2; RA19-20:¶17; RA21:¶23; RA22:¶27; RA22:¶28; *see also* App. Br. 16.)

That Lactaid®'s labeling does not match DiCroce's personal belief that the product is a drug and should be FDA approved is not a "deceptive act" because one consumer's misinterpretation of a label is not enough to allege a "deceptive act" under Massachusetts law. *See Fitzgerald v. Polar Corp.*, 2020 WL 6586628, at *4 (D. Mass. Nov. 10, 2020) (dismissing claims where "no reasonable consumer" would believe plaintiff's personal interpretation of the label); *Carlson v. Gillette Co.*, 2015 WL 6453147, at *5 (D. Mass. Oct. 23, 2015) (dismissing chapter 93A claims where "[n]o reasonable consumer would believe" plaintiff's urged interpretation of the product label).[1]

DiCroce argues that the district court erred and that she has pleaded a deceptive act because Lactaid® is an "unapproved drug[]," contrary to the statements on its labeling. (App. Br. 7.) As an initial matter, this argument fails because there is no deception: the labels affirmatively disclose that FDA has not

---

[1] *See also Moore v. Trader Joe's Co.*, 4 F.4th 874, 884 (9th Cir. 2021) (affirming dismissal of deceptive marketing claim because of "the sheer implausibility of Plaintiffs' alleged interpretation," which would not be "reasonably" shared by "a consumer of any level of sophistication"); *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 493 (7th Cir. 2020) (Kanne, J., concurring) ("It's well settled that a label is not deceptive as a matter of law when the plaintiff's interpretation is so facially illogical, implausible, or fanciful that no reasonable consumer would think it—and that dismissal is warranted in those circumstances."); *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (affirming dismissal of deceptive advertising claim because "it is simply not plausible that a significant portion of the general consuming public acting reasonably would" interpret the product label as plaintiff did).

reviewed—and therefore has not "approved"—the tablets or the accompanying statements. No reasonable consumer would be deceived into thinking they *were* approved.

But DiCroce is wrong that Lactaid® is any kind of "drug" (approved or otherwise) because under the governing regulations, Lactaid® is, in fact, a dietary supplement. The types of statements DiCroce cites as "disease claims" (*e.g.*, "For the Prevention of . . . Gas . . . Bloating [and] Diarrhea associated with digesting diary" (RA19:¶17)) are actually permitted "structure/function" claims. A structure/function claim, among other things, "describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans." 21 U.S.C. § 343(r)(6)(A). As explained above, enzymes *are* quintessential dietary ingredients, *see supra* at 7-9, and the FDCA, as amended by the DSHEA, governs dietary supplement labeling and permits structure/function claims in the marketing of dietary supplements like Lactaid®. In addition, the FDA has explicitly concluded that the statements "[a]lleviates the symptoms referred to as gas" and "alleviates bloating" are "acceptable structure/function claims, because the symptoms in the claims are not sufficiently characteristic of specific diseases." *Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body*, 65 Fed. Reg. 1000, 1031 (Jan. 6, 2000); *see also* 21 C.F.R § 101.93(f) (2011).

22

## II.    The FDCA Preempts DiCroce's Allegation That Lactose Intolerance Is A Disease

DiCroce argues that the district court erred and she has pleaded a deceptive act because lactose intolerance is a "disease," which transforms Lactaid® from a dietary supplement into a drug, contrary to the statements on its labeling.  (App. Br. 7-10, 16.)  Although this Court need not reach this issue to affirm the decision below, this argument fails for two reasons: DiCroce has pleaded no facts supporting the inference that lactose intolerance is a disease, and the FDCA preempts such a claim.

### A.    DiCroce has not pleaded any facts that support the inference that lactose intolerance is a disease.

As an initial matter, FDA, now and historically, has described lactose intolerance as a "deficiency" or a "discomfort"—not as a disease. (RA211.)  Indeed, DiCroce has not cited a single FDA statement even suggesting that lactose intolerance is a "disease."

DiCroce's sole authority that lactose intolerance is a "disease" is a website that says no such thing.  DiCroce cites a National Institutes of Health ("NIH") webpage about lactose intolerance, which appears under the navigational heading "Digestive Diseases."    (See RA20:¶19; RA207.)    Contrary to DiCroce's characterization (App. Br. 9), nowhere on this webpage does the NIH actually state that lactose intolerance is a "disease."  In fact, the webpage's "Definitions & Facts" section defines lactose intolerance as "a *condition* in which you have digestive

23

symptoms—such as bloating, diarrhea, and gas—after you consume foods or drinks that contain lactose." (RA207 (emphasis added).) Other conditions under the same "Digestive Diseases" navigational heading include "gas in the digestive tract," "diarrhea," and "indigestion"—none of which are "diseases." (RA203-204.)

DiCroce also argues that because TUMS is FDA-approved to treat heartburn and other stomach problems, Lactaid® requires FDA approval to "treat" lactose intolerance. (RA21:¶21; App. Br. 10.) This argument reveals the depth of her misunderstanding of the regulatory landscape. To start, TUMS labeling contains a "Drug Facts" panel because an FDA monograph governs TUMS's active ingredient: calcium carbonate. *See* 21 C.F.R. § 331.11 (1990).[2] As the FDA explains, monographs for over-the-counter ("OTC") drugs "provide the marketing conditions

---

[2] Similarly, petrolatum, the active ingredient in Vaseline, is governed by an FDA monograph. *Compare* RA 21 ¶ 22 (discussing petrolatum), *and* App. Br. 9-10 (discussing Vaseline and citing its Drug Facts panel), *with* 21 C.F.R § 347.10(r) (2003); *see also Skin Protectant Drug Products for Over-the-Counter Human Use; Final Monograph*, 68 Fed. Reg. 33362 (June 4, 2003).

for some OTC drug products including the active ingredients, labeling, and other general requirements."[3]  By contrast, no FDA monograph governs lactase.[4]

## B.    The FDCA preempts DiCroce's allegations.

DiCroce argues that the district court erred in disallowing the issue of whether lactose intolerance is a disease to go to discovery.  (App. Br. 16.)  Again, this Court *need not* reach this issue to resolve this appeal.  As explained above, Lactaid® is a dietary supplement, and its packaging fully complies with FDA regulations and guidance: it includes permitted structure/function claims, 21 U.S.C. § 343(r)(6)(A), as well as the FDA-required disclaimers for dietary supplement labels, *id.* § 343(r)(6)(C).  DiCroce has thus failed to plead allegations that "make it plausible that, on a full factual record, a factfinder could reasonably regard the label as having

---

[3] FDA, *Small Business Assistance: Frequently Asked Questions on the Regulatory Process of Over-the-Counter (OTC) Drugs* (Nov. 18, 2022), https://www.fda.gov/drugs/cder-small-business-industry-assistance-sbia/small-business-assistance-frequently-asked-questions-regulatory-process-over-counter-otc-drugs.  This Court may take judicial notice of information on FDA's website. *See Gustavsen v. Alcon Lab'ys, Inc.*, 272 F. Supp. 3d 241, 252 (D. Mass. 2017), *aff'd*, 903 F.3d 1 (1st Cir. 2018) ("Courts in the District of Massachusetts have considered information on the FDA's website subject to judicial notice and consideration on a motion to dismiss."); *accord Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking "judicial notice of the relevant facts provided on the [Center for Disease Control's] website").

[4] DiCroce alleges that the NIH "defines" calcium carbonate as a dietary supplement (RA21:¶21), but cites to an American Society of Health-System Pharmacists webpage, not anything the NIH has "defined."

the capacity to mislead," and her complaint was rightly dismissed. *Dumont v. Reily Foods Co.*, 934 F.3d 35, 40 (1st Cir. 2019).

More importantly, this Court *should not* reach the issue of whether lactose intolerance is a disease. Whether lactose intolerance is a disease is for FDA to decide, not the federal judiciary, and FDA has taken no such position. Permitting extended litigation on DiCroce's dubious allegation would upset the regulatory scheme Congress designed in enacting the FDCA: DiCroce's allegation that lactose intolerance is a disease is merely a dressed-up argument that Defendants have violated the FDCA—but, as DiCroce recognizes (RA16:¶6), the FDCA provides no private right of action. *See* 21 U.S.C. § 337(a). Accordingly, the district court rightly disallowed DiCroce from using Massachusetts state law as an vehicle through which to seek redress for a purported FDCA violation. *See Amarin Pharma, Inc. v. Int'l Trade Comm'n*, 923 F.3d 959, 968 (Fed. Cir. 2019) ("[A] complainant fails to state a cognizable claim under § 337 where that claim is based on proving violations of the FDCA and where the FDA has not taken the position that the [products] at issue do, indeed, violate the FDCA."). Thus, this Court may also affirm the district court's dismissal because, to the extent her claims are based not on consumer deception but on a freestanding theory that Defendants "misbranded" Lactaid®, they fail at the threshold: they are impliedly and expressly preempted by the FDCA.

26

**1. The FDCA impliedly preempts DiCroce's misbranding claims.**

DiCroce's complaint is impliedly preempted by the FDCA because it is wholly premised on the theory that the Lactaid® supplements' labeling violates the FDCA. That DiCroce's lawsuit hangs on the idea that Lactaid® was sold in violation of federal law, not because she was personally harmed, is evident from how she summarizes her legal theory in the preemption section of her brief: she argues that Lactaid®'s labeling is misleading because it misidentifies the product as a dietary supplement, implies that Lactaid® does not require FDA approval, and contains disease claims. (App. Br. 27.) These assertions all hinge on purported violations of the FDCA—not on allegations of personal injury.

DiCroce's claims, therefore, are impliedly preempted because they "exist solely by virtue of the FDCA . . . requirements." *Buckman Co.*, 531 U.S. at 353. In other words, she is suing Defendants only *because* their conduct purportedly violates the FDCA. *In re Medtronic, Inc.*, 623 F.3d 1200, 1204 (8th Cir. 2010) ("[T]o escape . . . implied preemption[,] [t]he plaintiff must not be suing because the conduct violates the FDCA."). Her consumer protection claims, therefore, are impliedly preempted by the FDCA. *See, e.g.*, *Elkind v. Revlon Consumer Prod. Corp.*, 2015 WL 2344134, at *9 (E.D.N.Y. May 14, 2015) (dismissing state law mislabeling claims on preemption grounds because claims "arise because Plaintiffs allege that the [product labeling] violate[s] the FDCA, and prosecuting that violation lies

squarely within the province of the FDA"); *Verzani v. Costco Wholesale Corp.*, 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010) (dismissing state law misbranding claim on preemption grounds where plaintiff's "persistent allegations that [defendant's] labeling . . . violates the FDCA and the Food and Drug Administration's regulations . . . indicates that his true purpose is to privately enforce alleged violations of the FDCA, rather than to bring a claim for [an] unfair and deceptive business practice[]"), *aff'd*, 432 F. App'x 29 (2d Cir. 2011); *Borchenko v. L'Oreal USA, Inc.*, 389 F. Supp. 3d 769, 774 (C.D. Cal. 2019) (dismissing on preemption grounds state law unfair competition claim that defendant's cosmetic product is really a drug because its labels make "drug claims").

DiCroce argues that her claims are not impliedly preempted because she asserts violations only of state law. (App. Br. 27-28; *see also* RA18-19:¶16 (citing Massachusetts food labeling laws).) But DiCroce may not evade implied preemption by purporting to enforce only Massachusetts law. As the Supreme Court has held, when a plaintiff's lawsuit is premised on state law claims that do not "predate[] the federal enactments in question," and "the existence of [a] federal enactment[] is a critical element in [plaintiff's] case," the plaintiff's claims are impliedly preempted because they would otherwise "exert an extraneous pull on the [enforcement] scheme established by Congress." *Buckman Co.*, 531 U.S. at 353. Here, DiCroce's repeated invocations of the FDCA and the FDA's regulations—and, indeed, no

citations to or analysis of Massachusetts' food labeling laws outside of one paragraph in her complaint[5]—make it clear that DiCroce's state law claims are "in substance (even if not in form) a claim for violating the FDCA," and therefore her state law claims are impliedly preempted. *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009); *see also Chong v. Kind LLC*, 2022 WL 464149, at *4 (N.D. Cal. Feb. 15, 2022) (FDCA impliedly preempted state labeling law adopting FDCA's food labeling standards).

## 2. The FDCA expressly preempts DiCroce's misbranding claims.

DiCroce's complaint is also expressly preempted by the FDCA because she attempts to impose on Defendants requirements that are inconsistent with the FDCA.

The FDCA expressly preempts state law food labeling requirements that are "not identical to the requirements of section 343(r)." 21 U.S.C. § 343-1(a)(5). This provision applies to Lactaid® products because dietary supplements are deemed to be "food" for purposes of the FDCA. *Id*. § 321(ff).

Here, DiCroce seeks to either prevent Defendants from making structure/function claims about the effects of lactase, or require Defendants to include a "Drug Facts" panel on Lactaid® products that the FDA only uses on "drug"

---

[5] The majority of the state laws and regulations cited do not predate the FDCA. *See* RA. 18-19:¶16 (citing 105 CMR 590 (2018); 105 CMR 500 (2016); Mass. Gen. Laws ch. 94, § 187 (1978)).

labels. (RA21-22:¶24.) Because DiCroce's claims are based on Lactaid® products needing labeling *beyond* the FDA's requirements for dietary supplements, they are expressly preempted. *See Min Sook Shin v. Umeken, U.S.A., Inc.*, 2017 WL 6885378, at *6, 9 (C.D. Cal. June 1, 2017) (dismissing as expressly preempted claims that "structure/function" statements were "drug" claims), *aff'd*, 773 F. App'x 373 (9th Cir. 2019); *Korolshteyn v. Costco Wholesale Corp.*, 393 F. Supp. 3d 1019, 1023 (S.D. Cal. 2019) (holding the FDCA preempts plaintiff's state false advertising claims when "Defendants' Label Claims are permissible structure/function claims pursuant to the FDA's guidance and meet all the federal labeling requirements"); *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 848 (9th Cir. 2019) (holding the FDCA "preempts Plaintiff's claims to the extent that he argues that Defendants' structure/function claims are false or misleading because their supplements do not prevent [a] disease").

## III.  The District Court Correctly Dismissed DiCroce's False Advertising Claim

The district court also correctly dismissed DiCroce's false advertising claim for failure to plead an essential element: a deceptive or misleading advertisement. (RA169.) The Court may affirm the district court's dismissal of this claim on this basis alone.

DiCroce argues that she has stated a false advertising claim by pleading that the Lactaid Supplements are "misbranded" because they make "illegal Disease

Claims on the products' label and other advertising of the product." (App. Br. 29-30.) But this claim is doomed, just like her chapter 93A claim: DiCroce's personal and idiosyncratic interpretation of Lactaid®'s labels are not sufficient to plead an "assertion, representation or statement of fact which is untrue, deceptive or misleading." Mass. Gen. Laws ch. 266, § 91. As explained above, she has neither pleaded a "deceptive act" that would "mislead" a reasonable consumer, *see supra* at 20-23, nor has she identified affirmative misstatements on the Lactaid® labels, *see supra* at 19-20. *See Patenaude v. Orgain, LLC*, 594 F. Supp. 3d 108, 116 (D. Mass. 2022) ("Plaintiff fails to plausibly allege the label of Product is deceptive or misleads consumers and does not allege the label is untrue. As such, Plaintiff's c. 266 claim fails for the same reasons his Chapter 93A claim fails."); *Bernstein v. Conopco, Inc.*, 2022 WL 2161149, at *5 (D. Mass. June 15, 2022) (same).

DiCroce's false advertising claim also fails for another, independent reason: no alleged facts show anything close to scienter. The false advertising statute bars advertisements containing "any assertion, representation or statement of fact which is untrue, deceptive or misleading, and which such person knew, or might on reasonable investigation have ascertained to be untrue, deceptive or misleading[.]" Mass. Gen. Laws ch. 266, § 91. Accordingly, to state a claim, DiCroce must plead particularized facts "in [] support of her conclusory allegations that the Defendants knew, or could, upon reasonable investigation, have ascertained that their labeling

. . . was untrue, deceptive and misleading." *Martin v. Mead Johnson Nutrition Co.*, 2010 WL 3928710, at *15 (D. Mass. Sept. 13, 2010), *report and recommendation adopted in relevant part*, 2010 WL 3928707 (D. Mass. Sept. 30, 2010); *see also Blake v. Pro. Coin Grading Serv.*, 898 F. Supp. 2d 365, 395 (D. Mass. 2012) ("A plaintiff must plead this claim with specificity, as it falls within the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).").

DiCroce has made no such showing: the FAC contains just one conclusory allegation: that "Defendants knew or should have known that the statements they made and disseminated on the Supplements' packaging and labels, Defendants' website and other marketing materials for the Lactaid Supplements were deceptive and/or misleading by the inclusion of the illegal Disease Claims described herein in violation of M.G.L. c. 266, § 91, in said advertising." (RA33:¶77.)  Because the FAC offers no facts supporting that assertion, the claim should be dismissed.  *See Martin*, 2010 WL 3928710, at *15 (dismissing false advertising claim when no "factual allegations" supported assertion that defendant "knew or should have known about the alleged problems in its advertising").[6]

_____

[6] DiCroce's false advertising claim is also flawed because she lacks standing to seek the only remedy available under ch. 266, § 91: injunctive relief.  *See infra* Part [] (demonstrating DiCroce lacks standing to seek injunctive relief); *Thornton v. Harvard*, 2 F. Supp. 2d 89, 95 (D. Mass. 1998) ("Mass. Gen. L. ch. 266, § 91 . . . does not provide a private right of action for damages.").

**IV.  The District Court Correctly Dismissed Plaintiff's Unjust Enrichment Claim**

The Court should also affirm the dismissal of DiCroce's unjust enrichment claim because she has an adequate remedy at law—namely, her chapter 93A and false advertising claims.

Under Massachusetts law, unjust enrichment is "a theory of equitable recovery, not an independent cause of action." *Flores v. OneWest Bank*, 172 F. Supp. 3d 391, 396 (D. Mass. 2016), *aff'd*, 886 F.3d 160 (1st Cir. 2018).  As this Court has recognized, "a party with an adequate remedy at law cannot claim unjust enrichment," *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017), because it is merely an "equitable stopgap for occasional inadequacies in contractual remedies at law," *Mass. Eye & Ear Infirmary v. QLT*, 412 F.3d 215, 234 (1st Cir. 2005).  That DiCroce's legal claims are meritless changes nothing: "It is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment."  *Shaulis*, 865 F.3d at 16; *see also Tomasella*, 962 F.3d at 84 ("The viability of [plaintiff]'s Chapter 93A claims is 'beside the point.'  [Plaintiff's] unjust enrichment claims must be dismissed because an adequate remedy at law was undoubtedly available to her through Chapter 93A." (quoting *Reed v. Zipcar, Inc.*, 883 F. Supp. 2d 329, 334 (D. Mass. 2012))).  Contrary to DiCroce's assertions (App. Br. 31-32), this Court routinely affirms the dismissal of unjust enrichment claims at

33

the pleading stage.  *See Tomasella*, 962 F.3d at 84 (affirming dismissal of unjust enrichment claim); *Shaulis*, 865 F.3d at 16 (same).

DiCroce cites three cases in support of her argument that her unjust enrichment claim should survive (App. Br. 32), but they are inapposite.  First, in *Depianti v. Jan-Pro Franchising International, Inc.*, 39 F. Supp. 3d 112 (D. Mass. 2014), the district court recognized that "[w]here plaintiff has an adequate remedy at law, equity will not consider a claim for unjust enrichment," but reserved decision as to whether plaintiff's unjust enrichment claim was barred because the parties failed to brief whether the factual allegations underlying the unjust enrichment claim were the same allegations underlying plaintiff's chapter 93A claim.  *Id*. at 143.  In reserving decision, the court noted that plaintiff "will not ultimately be permitted to recover on both legal and equitable claims arising from the same facts."  *Id.*  Here, however, there is no doubt DiCroce premises her unjust enrichment claim on the same factual allegations underlying her chapter 93A and false advertising claims. (*See* RA32:¶68.)

Second, *Vass v. Blue Diamond Growers*, 2015 WL 9901715 (D. Mass. Aug. 11, 2015), relies on a misunderstanding of this Court's precedent articulated in *Lass v. Bank of America, N.A.*, 695 F.3d 129 (1st Cir. 2012).  In *Tomasella*, this Court explained that *Lass* turned on an "ambiguity" as to whether a claim "was indeed available as a legal remedy for the plaintiff in that case."  962 F.3d at 84.

Here, as in *Tomasella*, no such ambiguity exists because DiCroce has not made "any showing that Chapter 93A provides an insufficient remedy at law." *Id*.

Finally, in *Massachusetts v. Mylan Laboratories*, the plaintiff argued that the available remedies at law were *inadequate* to remedy its injury. 357 F. Supp. 2d 314, 324 (D. Mass. 2005) ("Plaintiff responds that any remedies at law against providers would leave Defendants in possession of the fruits of their alleged fraud in the form of profits from increased sales and market share."). DiCroce makes no argument that the remedies at law available to her are inadequate—she argues only that she would like to plead an alternative remedy. (App. Br. 32.)

## V.    This Court May Affirm On The Alternative Ground That DiCroce Has Failed To Plead Any Injury

In the alternative, this Court may affirm the district court's judgment because DiCroce has failed to plead an injury sufficient to establish standing under Article III or to state a chapter 93A claim under Massachusetts law. *See In re Montreal, Me. & Atl. Ry., Ltd.*, 888 F.3d 1, 8 n.4 (1st Cir. 2018) ("When reviewing the grant of a motion to dismiss for failure to state a claim, we are not wed to the lower court's reasoning but may affirm on any ground supported by the record.").

Under Article III, DiCroce must allege an actual, concrete injury that has a nexus to a defendant's purportedly actionable conduct. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *Kerin v. Titeflex Corp.*, 770 F.3d 978, 981 (1st Cir. 2014) (same). Similarly, to state a chapter 93A claim, DiCroce "must 'show

real economic damages,' as opposed to some speculative harm." *Shaulis*, 865 F.3d at 10 (quoting *Rule v. Fort Dodge Animal Health*, 607 F.3d 250, 253 (1st Cir. 2010)). DiCroce has not made this showing because her allegation of economic harm is purely speculative.

DiCroce argues she has sustained an injury sufficient to establish standing based on her allegation that she paid $0.11 per pill more for Lactaid® than she would have for alternative lactase supplements because of Lactaid®'s purportedly misleading labels. (RA24-25:¶34.) The district court agreed with DiCroce, holding that she had "plausibly alleged a legally cognizable injury" to establish Article III standing because she "alleges she paid a premium for Lactaid because of its marketing statements." (RA166.) The district court's holding is wrong for two reasons.

First, DiCroce has not alleged facts that support a "price premium" theory of injury. In each of the cases she cites, the plaintiff alleged they were promised a *specific benefit* that they did not receive: that a beer was Irish when it was actually brewed in Canada (*O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 449 (D. Mass. 2018)); that a coffee pod was recyclable when it actually was not (*Downing v. Keurig Green Mountain, Inc.*, 2021 WL 2403811, at *1 (D. Mass. June 11, 2021)); or that a "Clean Diesel" car was environmentally friendly when it actually emitted more pollution than its gasoline counterparts (*Counts v. Gen.*

36

*Motors, LLC*, 606 F. Supp. 3d 547, 559 (E.D. Mich. 2022)).  These cases establish the principle that, to allege an overpayment or "price premium" injury, "there must be factual allegations from which a jury could conclude that the product at issue was 'deficient in some objectively identifiable way.'"  *O'Hara*, 306 F. Supp. 3d at 458 (quoting *Shaulis*, 865 F.3d at 12).  As the court in *O'Hara* underscored, a bare "allegation that plaintiff paid a 'price premium' 'as a result' of Defendants' deception, is by itself, too 'conclusory' and 'speculative' to a state a claim for injury or damages."  *Id*.

Here, DiCroce has asserted only a bare allegation that she paid a price premium—she has not identified any "objectively identifiable" deficiency in Lactaid® or its labels.  For instance, she does not allege that Lactaid®, for her, failed to deliver on its promise of "prevent[ing]" the "gas, bloating, and diarrhea" associated with digesting dairy.  For the facts of this case to align with those in *O'Hara*, *Downing*, and *Counts*, DiCroce would need to allege that Lactaid® promised to prevent gas, bloating, and diarrhea associated with dairy *but actually did not deliver as promised for her*.[7]  But DiCroce does not allege that Lactaid® was

---

[7] The FAC cites to a single study regarding the efficacy of lactase supplements generally (not specific to Lactaid® supplements) showing mixed efficacy for consumers.  (RA23:¶31.)  This is not enough to establish Article III standing: DiCroce must allege how *she personally* was injured.  *See In re Biogen, Inc. ERISA Litig.*, 2021 WL 3116331, at *3 (D. Mass. July 22, 2021) ("A named plaintiff in a

deficient in this or any other "objectively identifiable way."  In fact, her multiple purchases over the years (RA22:¶26) strongly suggest the opposite: that, as to her, Lactaid *did* prevent gas, bloating, and diarrhea associated with digesting dairy.

DiCroce's personal interpretation of FDA regulations does not create the specific promise of a benefit as in *O'Hara*, *Downing*, and *Counts*.  She asserts that Defendants were able to charge a "premium" for Lactaid® based on alleged "mislabeling" because she personally believes that the supplements treat a disease (lactose intolerance) and therefore the supplements should be deemed drugs subject to FDA approval.  (RA24:¶33.)  But, again, Lactaid® labels disclaim every aspect of such a promise in multiple ways, on both the front and back of the package in prominent fonts.  Thus, in contrast to *O'Hara*, *Downing*, and *Counts*, Plaintiff's "price premium" theory here is not based on a producer's specific promise of a benefit that it did not deliver.  Instead, her theory is based on a claim that is absurd on its face: that Lactaid® is sold at a "price premium" because of her personal interpretation of FDA regulations, which is clearly and explicitly disclaimed in several places on Lactaid®'s packaging.

Second, DiCroce alleges that the availability of cheaper lactase supplements from other brands demonstrates that Defendants were able to charge an improper

---

putative class action has class standing if he alleges *personal injury* caused by the defendant." (emphasis added)).

premium based on the purported "mislabeling" (App. Br. 19 (citing RA24:¶34)) and that she would have either not purchased Lactaid® or she would "only been willing [sic] to pay a lower price reflecting" Lactaid®'s "true value as supplements of limited effectiveness in digesting dairy products" (RA24:¶33).  In other words, her overpayment injury theory hinges on the notion that the cheaper lactase supplements lack statements that suggest that they "treat the disease of lactose intolerance," as DiCroce believes that the Lactaid® labels claim to do.  (RA22:¶27.)

But her argument unravels upon closer inspection because the two products she points to are marketed with similar statements to the ones on the Lactaid® labels that she asserts are misleading.  The Puritan's Pride supplement bears statements that it aids in the digestion of dairy and milk ("milk & dairy digestant") along with the FDA-required disclaimer that it is not a drug and treats no disease.  (RA126.) The Vitamin Shoppe product is also marketed as a supplement, and its Amazon.com page (*see* RA24:¶34) states that it "Supports Lactase or Dairy Digestion" along with the FDA-required disclaimer (RA150).  Under DiCroce's interpretation of the FDCA, the cheaper supplements she identifies would also be "misbranded" because they "contain claims" that they "treat, cure, or mitigate . . . symptoms associated with being lactose intolerant," and thus are also sold at a "premium" under her supposed "price premium" theory.  (RA16:¶2.)  Ultimately, pointing to lactase pills that are just as "misbranded" reveals that all she has asserted is a bare allegation that

she would have made a different purchasing decision if the product were labeled differently. That is not enough to plead an injury under Massachusetts law. As this Court has emphasized, a "purchase-as-injury claim," like the claim here, "collapses the SJC's required distinction between deception and injury by attempting to plead an assertion about a consumer's disappointed expectations of value in place of an allegation of real economic loss." *Shaulis*, 865 F.3d at 11.[8]

## VI. DiCroce's Arguments About Several Non-Dispositive Issues Are Meritless, And The Court Need Not Reach Them

In addition to the issues briefed above, DiCroce briefs several arguments that are not dispositive of this appeal and that the district court did not reach: (A) that those who purchased Lactaid® products are entitled to multiple damages (App. Br. 22-24); (B) that she has standing to seek injunctive relief (App. Br. 28-29); and (C) Defendants' challenge to her nationwide class claim before the district court was erroneous and premature (App. Br. 32-35). Her arguments as to each are meritless for the reasons discussed below, but the Court need not consider these issues to resolve this appeal.

---

[8] DiCroce also contends that Defendants injured consumers by somehow "misdiagnosing" them with lactose intolerance. (*See* App. Br. 22.) She cites no case law for the proposition that a product label "diagnoses" (or misdiagnoses) anyone by truthfully advertising its benefits.

**A.    DiCroce is not entitled to multiple damages.**

DiCroce seeks multiple damages for her chapter 93A and false advertising claims.  (RA33:¶iii.)  She may not recover multiple damages for either cause of action.

To start, DiCroce may not recover multiple damages for her chapter 93A claim because she has made no showing that Defendants' purported violation was "willful or knowing."  Mass. Gen. Laws. ch. 93A, § 9(3) (allowing double or treble damages upon the finding of a "willful or knowing violation" of chapter 93A, § 2). To plead a "willful" or "knowing" violation of chapter 93A, DiCroce must allege that Defendants "made the representation without knowing whether it was true or false and with reckless disregard for whether it was true or false" ("willful") or "knew that the fact they represented to be true was not true" ("knowing").  *Shaw v. Rodman Ford Truck Ctr., Inc.*, 477 N.E.2d 413, 415 (Mass. App. Ct. 1985) (reasoning adopted in *Comput. Sys. Eng'g, Inc. v. Qantel Corp.*, 740 F.2d 59, 68 (1st Cir. 1984)).  The "willful or knowing" requirement "is directed against callous and intentional violations of the law."  *Heller v. Silverbranch Constr. Corp.*, 382 N.E.2d 1065, 1070 (Mass. 1978).

DiCroce has pleaded no facts that would support an inference that the statements on Lactaid® packaging are false, let alone that Defendants made those statements knowing they were false or with reckless disregard as to whether they

were false so as to constitute a "callous and intentional" violation of chapter 93A. Indeed, the FAC contains only one conclusory assertion that "Defendants' violations of M.G.L. c. 93A and other substantially similar state consumer protection statutes were willful and knowing." (RA31:¶62.) That is not enough to demonstrate plausible entitlement to multiple damages.

The authority she cites makes clear that she falls short of meeting this standard. Unlike here, the plaintiff in *Gore v. Arbella Mutual Insurance*, 77 Mass. App. Ct. 518, 532-33 (2010), specifically pleaded—and the defendants did not contest—facts showing that the defendants "knew that liability was reasonably certain by the time it received the demand letter." Here, DiCroce pleads no facts at all, contested or otherwise. She avers only that Defendants' conduct was "willful or knowing" within the meaning of 93A. (App. Br. 22-23.) That conclusory allegation is nothing like the kinds of facts that courts find sufficient. For example, in *Newly Wed Foods v. Superior Nut*, 2010 WL 1178404, at *6 (Mass. Super. Ct. Feb. 18, 2010), the court found willful conduct where the company's vice president admitted that he had known for over 10 years that the product contained peanuts but failed to affix allergen labels to the packaging. And in *Gabriel v. Jackson National Life Insurance*, 2015 WL 1410406, at *20 (D. Mass. Mar. 26, 2015), the court found willful and knowing conduct where defendant sent notices requiring payments in an

amount that directly contradicted the insurance policy's terms.  No facts like these are pleaded here.

Nevertheless, DiCroce argues that if Defendants violated chapter 93A, she is automatically entitled to multiple damages.  (*See* App. Br. 23 ("[I]f the Court or trier of fact concludes that the statements on the [Lactaid®️ labels] are disease claims, . . . [t]hat misrepresentation is also 'willful or knowing' within the meaning of 93A, so Plaintiff is entitled to multiple damages.").)  That is incorrect as a matter of law.  "Liability under Chapter 93A . . . does not automatically trigger punitive damages.  There must be something more."  *Cambridge Plating Co. v. Napco, Inc.*, 85 F.3d 752, 770 (1st Cir. 1996); *see also Kansallis Fin. Ltd. v. Fern*, 659 N.E.2d 731, 738 (Mass. 1996) ("[T]he Legislature envisaged multiple damage awards against those defendants with a higher degree of culpability than that sufficient to ground simple liability.").

DiCroce also may not recover multiple damages for her false advertising claim because multiple damages are not available for that cause of action.  Under Massachusetts law, multiple damages may not be awarded unless authorized by statute.  *Flesner v. Tech. Commc'ns Corp.*, 575 N.E.2d 1107, 1112 (Mass. 1991).  There is no statute in Massachusetts allowing recovery of multiple damages for her false advertising claim, and DiCroce has identified none.  Although other sections of Mass. Gen. Laws ch. 266 provide for multiple damages, section 91 does not.  *See*,

43

*e.g.*, Mass. Gen. Laws ch. 266, § 120E (allowing exemplary damages, litigation costs, and attorneys' fees for obstruction of a medical facility's right to provide services); *id*. ch. 266, § 141 (allowing treble damages for odometer tampering); *see also* Stephen D. Riden, *General Law of Damages in Massachusetts* § 1.1.3 (5th ed. 2022) (comprehensively listing Massachusetts statutes that provide for multiple damages, with none permitting multiple damages for violations of Mass. Gen. Laws ch. 266, § 91).

### B.     DiCroce lacks standing to seek injunctive relief.

DiCroce seeks to enjoin Defendants from continuing to purportedly violate chapters 93A, § 2 (RA31:¶65), and 266, § 91 (RA33:¶78).  But she does not have standing to seek injunctive relief because she has not alleged any likely future injury.

To demonstrate standing for injunctive relief, a plaintiff must show that she is "likely to suffer future injury."  *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 276 (1st Cir. 2022).  "[A]ssertions about . . . past behavior do not plausibly allege any likelihood of relying on [defendant's] advertising or purchasing [defendant's] product] in the future" and do not discharge a plaintiff's burden of showing an "impending future injury that an injunction might redress."  *In re Evenflo Co. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 54 F.4th 28, 41 (1st Cir. 2022).

Here, DiCroce pleads allegations only as to past behavior, so she has failed to meet her burden.  (*E.g.*, RA24:¶33 ("Had the Lactaid Supplements been properly

44

labeled, Plaintiff's purchasing decisions *would have been different*.") (emphasis added); RA26:¶39 ("Plaintiff and millions of other consumers in Massachusetts and throughout the United States who *purchased* misbranded Lactaid Supplements *suffered* economic harm.") (emphasis added).) She does not, for example, allege that she "intends to purchase [Lactaid® products] in the future." *Evenflo*, 54 F.4th at 41. In fact, her brief is devoid of any argument at all as to why she will suffer future injury without injunctive relief; it contains only a string of citations to inapposite cases in which the plaintiffs had adequately alleged likely future injury. (*See* App. Br. 28-29.)[9]

## C. DiCroce cannot represent a nationwide class.

DiCroce argues that Defendants' request that the district court strike DiCroce's allegations on behalf of a "Nationwide Class" of Lactaid® purchasers was premature. (App. Br. 32-35.) That is incorrect. Defendants properly raised this

---

[9] *Downing*, 2021 WL 2403811, at *4 (finding standing for injunctive relief because "[t]he court finds plausible that Plaintiff would purchase [defendant's product] again if he had confidence that they were recyclable"); *Weissman v. UnitedHealthcare Ins. Co.*, 2021 WL 858436, at *10 (D. Mass. Mar. 8, 2021) (reserving decision as to injunctive relief where complaint asserts a putative class of persons "whose requests for [a certain type of cancer treatment] will be denied in the future"); *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Pracs. Litig.*, 2015 WL 7282543, at *4 (D.N.H. Nov. 16, 2015) (finding standing for injunctive relief when "plaintiffs have expressly stated that they remain hand soap consumers"); *Derby v. Jos. A. Bank Clothiers, Inc.*, 2014 WL 7361023, at *8 (D. Mass. Dec. 23, 2014) (finding standing for injunctive relief because "plaintiff has alleged sufficient facts to establish that he is 'under threat' of a future injury").

issue at the pleading stage because it was "obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis." *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013).

DiCroce may not plead allegations on behalf of a "Nationwide Class" of Lactaid® purchasers because consumers who purchased the supplements in other states may not bring claims under chapter 93A or 266. Under the choice-of-law rules in Massachusetts for fraud and misrepresentation, the law of the state in which a plaintiff took action in reliance on a defendant's representations applies. *See Bushkin Assoc., Inc. v. Raytheon Co.*, 473 N.E.2d 662, 669 (Mass. 1985) (Massachusetts courts look to the Restatement (Second) of Conflict of Laws in determining choice of law issues); *see also* Restatement (Second) of Conflict of Laws § 148 cmt. g (1971) ("the place where a plaintiff acted in reliance on defendant's representations" is more important than the place where the defendant made or the plaintiff received the representations). Thus, any putative class members who saw the Lactaid® labels and acted in reliance on them outside of Massachusetts may not invoke Massachusetts consumer protection laws. *See Downing*, 2021 WL 2403811, at *8 (striking nationwide class allegation from complaint "because plaintiffs who saw [defendant's] advertisements and acted in reliance on them outside of Massachusetts are not covered by Chapter 93A"); *Camey v. Force Factor, LLC*, 2016 WL 10998440, at *3 (D. Mass. May 16, 2016) (striking

nationwide class allegation from complaint because "the only plausible reading of the complaint's class allegations is that the putative nationwide class members purchased [defendant's product] in their home states" and "[t]hose states, not Massachusetts, are the sites of plaintiffs' respective reliance on defendants' alleged misrepresentations, and this forecloses the application of Massachusetts law to claims arising from them").

Moreover, state consumer-protection laws, such as the Massachusetts Consumer Protection Act, are not designed to provide relief to out-of-state consumers in connection with out-of-state transactions. *See, e.g.*, *Steinbeck v. Dollar Thrifty Auto. Grp., Inc.*, 2008 WL 4279798, at *3 (N.D. Okla. Sept. 15, 2008) ("Generally, state consumer protection statutes do not provide relief to out-of-state consumers for an out-of-state consumer transaction."); *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 215-18 (E.D. Pa. 2000) ("State consumer fraud acts are designed to either protect state residents or protect consumers engaged in transactions within the state."). That principle has been codified in chapter 93A, § 11 of which requires the "actions and transactions constituting the alleged . . . unfair or deceptive act or practice" to have "occurred primarily and substantially within the commonwealth." Mass. Gen. Laws ch. 93A, § 11. The First Circuit has held that when "wrongdoing is not focused on Massachusetts but has relevant and substantial impact across the country, the 'primarily' requirement of section 11 cannot be satisfied." *Fishman*

*Transducers, Inc. v. Paul*, 684 F.3d 187, 197 (1st Cir. 2012); *cf. S. States Police Benev. Ass'n, Inc. v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 93 (D. Mass. 2007) (certifying subclass "compris[ing] only Massachusetts state claims seeking relief under M.G.L. ch. 93A").

Because putative class members who saw the Lactaid® labels and acted in reliance on them outside of Massachusetts are not covered under chapters 93A and 266, striking the nationwide class allegation from DiCroce's complaint is the proper remedy. The Court need not wait until after discovery to decide this settled legal question, as it is "obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis." *Camey*, 2016 WL 10998440, at *2 (quoting *Manning*, 725 F.3d at 59); *see also Downing*, 2021 WL 2403811, at *8 (striking nationwide class allegation at pleading stage).

## <u>CONCLUSION</u>

For the foregoing reasons, the judgment of the district court should be affirmed.

Dated: May 10, 2023                    Respectfully submitted,

                                       /s/ *Hannah Y. Chanoine*
                                       HANNAH Y. CHANOINE
                                        *Counsel of Record*
                                       KAYLA N. HARAN
                                       O'MELVENY & MYERS LLP
                                       Seven Times Square
                                       New York, NY 10036
                                       (212) 326-2000
                                       hchanoine@omm.com

                                       MATTHEW D. POWERS
                                       O'MELVENY & MYERS LLP
                                       Two Embarcadero Center
                                       28th Floor
                                       San Francisco, CA 94111
                                       (415) 984-8700
                                       mpowers@omm.com

                                       *Attorneys for Defendants-Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel certifies that this document complies as follows:

1. This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 10,934 words.

2. The document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Word 365 in 14 point Times New Roman font.  As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ *Hannah Y. Chanoine*
Hannah Y. Chanoine

## **CERTIFICATE OF SERVICE**

I, Hannah Y. Chanoine, hereby certify that on May 10, 2023, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system, which electronically served a copy on all counsel of record.

/s/ *Hannah Y. Chanoine*
Hannah Y. Chanoine